# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-4340

LYNNETTE MANNIE,

*Plaintiff-Appellant,*

v.

JOHN E. POTTER,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 01 C 9097—**Rebecca R. Pallmeyer**, *Judge.*

———————

ARGUED SEPTEMBER 30, 2004—DECIDED JANUARY 20, 2005

———————

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Lynnette Mannie brought this
action against the United States Postal Service, claiming
disability discrimination, retaliation, and hostile work envi-
ronment in violation of the Rehabilitation Act of 1973, 29
U.S.C. §§ 701 *et seq.* The district court granted summary
judgment for the Postal Service on the retaliation and hos-
tile work environment claims. The discrimination claim,
alleging that Mannie received disparate treatment in the
assignment of work hours due to her mental illness, para-
noid schizophrenia, went to trial and the jury found for the

Postal Service. Mannie appeals, challenging the grant of summary judgment as well as an evidentiary ruling excluding the testimony of Mannie's former co-worker at trial. We affirm.

Mannie first applied to the Postal Service in January 1994. In a pre-employment medical history questionnaire, known as a "Form 2485," she revealed that she had undergone treatment for paranoia and submitted a doctor's statement reflecting treatment for delusions resulting from her condition. When Mannie was not offered a position, she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") but dropped it when the Postal Service hired her later that year. Mannie completed another Form 2485 before she was hired, and this time she omitted her history of psychiatric treatment. In 1995 Mannie's supervisor, Phyllis James, reported that Mannie's co-workers had complained about her "erratic behavior, constant staring, and paranoia." Mannie underwent a "fitness for duty" exam and again denied having ever been treated for a psychiatric disorder. When the Postal Inspection Service discovered Mannie's original Form 2485 describing her paranoid schizophrenia, she was terminated for falsifying the two other forms. Mannie filed a charge with the EEOC, claiming that her termination was based upon her mental illness and was therefore discriminatory. After arbitration, Mannie was reinstated, but there was no finding that the Postal Serivce had discriminated against her.

In 1996 Mannie injured her wrist while working and filed a successful claim for workers' compensation. After her injury, Mannie was placed in the Nixie Unit where employees restricted to "light duty" for non-work related injuries and "limited duty" for work-related injuries are typically assigned because the work is not strenuous. In 1998 Mannie was diagnosed with tendonitis in her right wrist, and her doctor recommended that she be restricted from heavy lifting. The Postal Service again assigned her to the Nixie Unit where she has remained.

In August 2000 Mannie filed a charge with the EEOC, claiming that her supervisors had denied her work hours and benefits because of her mental condition and had retaliated against her for the filing of previous EEOC charges. She alleged that her schedule had been limited to 30 hours per week although part-time regular mail processors are usually allowed to work 37 ½ hours per week. According to Mannie, supervisors Camille Buford and Phyllis James made derogatory comments about her mental health and shared this "negative information" with subsequent supervisors who continued to deny her hours. Mannie claimed that the Postal Service accommodated employees with physical disabilities and scheduled them for "full hours" but did not extend the same treatment to employees with mental disabilities. Mannie also claimed that her supervisors instructed her to undergo an additional "fitness for duty" examination in June 2000 because of her mental disability.

In November 2001 Mannie filed suit in federal district court after her administrative claim had been pending for more than 180 days without resolution. In her complaint, Mannie claimed that she had been subjected to disparate treatment, retaliation, and hostile work environment. She alleged that her supervisors had ridiculed her paranoid schizophrenia and revealed her mental disorder to her co-workers. She also claimed that her supervisors had scheduled her for fewer hours than other employees in her job category because of both her mental disability and her prior EEOC filings.

The Postal Service moved for summary judgment on all of Mannie's claims. It argued that Mannie was not disabled within the meaning of the Rehabilitation Act because her physical and mental impairments did not limit her ability to perform any major life activities. The Postal Service also argued that Mannie had not suffered any adverse employment action on which to base her claims because Mannie had admitted that she was guaranteed only six hours of

work per day and she had always been scheduled and paid for this full amount. Moreover, Mannie had never signed the "overtime-desired" list that was the first step in being scheduled for overtime work. Finally, the Postal Service argued that Mannie could not establish that she was subjected to a hostile work environment because the conduct that she alleged was not sufficiently severe or pervasive.

In response to the motion for summary judgment, Mannie asserted that she had a disability because her supervisors perceived her as disabled and discriminated against her as a result. She also argued that she experienced adverse employment action because other part-time regular employees were scheduled to work more than six hours per day and allowed to sign up for overtime, while she was never scheduled for additional hours and was not given the opportunity to apply for overtime. In her affidavit, she listed the names of several employees whom she claimed were treated more favorably, but did not substantiate the hours that these employees worked. Additionally, most of the employees she listed were either full-time employees or part-time flexible employees, while Mannie was a part-time regular. As for her hostile work environment claim, Mannie asserted that she had suffered from "years of abuse" that would be considered objectively hostile by a reasonable person. As support, she submitted affidavits from co-workers who attested that Mannie's supervisors referred to her as "crazy." One co-worker attested that supervisors "regularly" told Mannie to go home, and often "paged" Mannie to instruct her to go home or to return from cigarette breaks. Mannie also stated that certain female co-workers intentionally offended her by wearing tight-fitting clothing and "strutting" in front of her, that someone had once placed two letters in her locker at work to harass her, and that a woman had hugged her in an effort to smell her.

The district court granted summary judgment for the Postal Service on the retaliation and hostile work envi-

ronment claims. With respect to the retaliation claim, the district court applied the burden-shifting analysis adopted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because Mannie had provided no direct evidence of retaliation. The district court found that Mannie had engaged in protected activity in filing two prior EEOC charges, but she had not identified any similarly situated persons who had not filed such charges and received more favorable treatment. The court also noted that Mannie had not established "even the slightest link" between her earlier complaints and the adverse actions of her supervisors.

In granting summary judgment for the Postal Service on the hostile work environment claim, the court held that none of the incidents of harassment that Mannie cited rose to the level of a hostile work environment as described in *Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999). The court noted that Mannie had produced no evidence that any harassing remarks were made directly to her; rather, she heard from other employees that her supervisors and co-workers had made derogatory statements about her. Moreover, the court found that Mannie did not establish that the harassment affected her job performance or altered the conditions of her employment.

Mannie's discrimination claim proceeded to trial where she argued that her supervisors perceived her as "crazy" and consequently assigned her fewer hours than other workers and denied her overtime. The Postal Service presented evidence that Mannie was always paid for six hours of work per day, and that she had never signed up for overtime. During the trial, the district court declined to allow the testimony of Edmund Lindsay, Mannie's former co-worker. Mannie's attorney submitted as an offer of proof an affidavit in which Lindsay attested that Mannie's former supervisor, Phyllis James, frequently made derogatory statements about Mannie, such as calling her "crazy" and suggesting that she was not a "live body." The district court

noted that Mannie's claims of discriminatory treatment originated in 2000, whereas James had left the Postal Service in 1997, and excluded the testimony on that basis. The jury found for the Postal Service. Mannie appeals the district court's evidentiary ruling at trial, as well as the grant of summary judgment on her hostile work environment and retaliation claims.

Turning first to the exclusion of Edmund Lindsay's testimony, we review the district court's evidentiary ruling for abuse of discretion. *Wyninger v. New Venture Gear*, 361 F.3d 965, 974 (7th Cir. 2004). Mannie argues for the first time on appeal that James had assigned her to a work schedule that she followed for years after James left for another branch of the Postal Service, and that James's derogatory statements were therefore relevant to the disparate treatment claim. But at trial the only offer of proof was Lindsay's affidavit, which simply recounted a few of James's comments. Any statements made by James prior to her departure in 1997 were too remote in time to be relevant to Mannie's 2000 claim that her supervisors were denying her the opportunity to work as many hours as employees who did not have mental illnesses. Because Mannie did not establish the relevance of James's three-year-old statements, the district court did not abuse its discretion in excluding Lindsay's testimony.

We turn next to Mannie's hostile work environment and retaliation claims, which were dismissed on summary judgment. We review de novo the district court's grant of summary judgment to the Postal Service. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). We view the evidence in the light most favorable to Mannie, the non-moving party, to determine if the record demonstrates that there is no genuine issue of material fact and that the Postal Service is entitled to judgment as a matter of law. *Id.* Mannie has no remedy for employment discrimination under the Americans With Disabilities Act ("ADA") because she is a federal employee. *See Rivera v. Heyman*, 157 F.3d

101, 103 (6th Cir. 1998). Thus, we evaluate her claims under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* Section 501 of the Act, which is the sole remedy for federal employees claiming disability discrimination, *see McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984), requires federal agencies to accommodate disabled employees and prohibits discrimination based on disability. 29 U.S.C. § 791(b); *McWright v. Alexander*, 982 F.2d 222, 225-26 (7th Cir. 1992). Employees who bring successful claims under § 501 are entitled to the remedies prescribed by Title VII. 29 U.S.C. § 794(a)(1); *McWright*, 982 F.2d at 226 n.1.

Mannie first argues that the district court improperly granted summary judgment on her hostile work environment claim because she had produced sufficient evidence to show "an ongoing and pervasive hostile environment." Although we have not yet decided whether a claim for hostile work environment is cognizable under the ADA or the Rehabilitation Act, we have assumed the existence of such claims where resolution of the issue has not been necessary. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 712-13 (7th Cir. 2000). We have further assumed that the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII. *Silk*, 194 F.3d at 804. *See also Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002).

A hostile work environment exists where an employee experiences harassment that is "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Farragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Conley*, 215 F.3d at 713. A plaintiff establishes an alteration in the terms and conditions of employment by demonstrating either a tangible employment action, such as discharge or demotion, or a non-tangible action, such as discriminatory conduct that is so severe or pervasive as to create an "abusive" working environment.

*Silk*, 194 F.3d at 804-05. Furthermore, the plaintiff must demonstrate that the workplace was both subjectively and objectively hostile. *Id.* at 805. An objectively hostile environment is one that a reasonable person would find hostile or abusive. *Id.*

Mannie has not established that any of the behavior that she describes was sufficiently severe or pervasive as to create a hostile work environment. She asserts that her supervisors made derogatory statements about her, discussed her mental condition with other employees, and paged her to return from cigarette breaks. In addition, she contends that her co-workers discussed rumors about her mental stability and engaged in behavior offensive to her such as wearing tight-fitting clothing. But Mannie has barely addressed the factors that we have deemed crucial in evaluating whether harassment is pervasive or severe, such as "the frequency, severity, and threatening or humiliating nature of the discriminatory conduct and whether it unreasonably interferes with [her] work performance." *E.g.*, *id.*, 194 F.3d at 804. Most of the conduct that forms the basis of her claim consists of derogatory statements made by supervisors or co-workers out of her hearing. The remaining incidents that Mannie describes, to the extent there is any record support for them, are isolated and not particularly severe and such conduct "is not sufficient to sustain a hostile work environment claim." *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004).

Moreover, Mannie has failed to demonstrate that the behavior of her co-workers and supervisors altered a term or condition of her employment. In *Silk*, we held that a police officer who experienced direct verbal abuse and threats of violence did not establish a hostile work environment because the harassment did not materially alter the conditions of his employment. *Id.* at 808. Mannie likewise has submitted no evidence that could establish that she experienced a tangible employment action or that she was unable

to perform her job because of the conduct of her supervisors and co-workers.

Mannie also argues that the district court improperly granted summary judgment on her retaliation claim. An employee bringing a retaliation claim must present either direct evidence of discrimination or indirect evidence under the burden-shifting analysis prescribed by *McDonnell Douglas. Kersting v. Wal-Mart Stores, Inc.*, 250 F. 3d 1109, 1117 (7th Cir. 2001). Mannie conflates the two recognized approaches by arguing that she presented direct evidence of retaliation and established pretext. Her claim fails under either method.

Mannie first argues that summary judgment was improper because she provided direct evidence of retaliation by demonstrating that she "was advised that her supervisors were aware of her filings of discrimination and viewed them negatively." Evidence of retaliation is "direct" when, if believed, it would prove the fact in question without reliance on inference or presumption. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). This "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus," *id.*, and because such evidence is rare we also allow the introduction of circumstantial evidence from which the fact-finder could infer intentional discrimination, *id.*; *Hottenroth*, 388 F.3d at 1028.

Mannie falls well short of presenting direct evidence of retaliation. She gives no record support for the contention that her supervisors viewed her EEOC filings negatively, nor does she specify who "advised" her of her supervisors' purported disapproval of her filings. But even if we accept that Mannie's supervisors "took a dim view of her complaining of discrimination," this is not direct evidence because it requires the inference that her supervisors' negative view of her discrimination charges caused them to take an adverse employment action. Mannie has not established

that any adverse employment action occurred because she admitted to always being scheduled for the minimum numbers of hours that she was guaranteed and she never sought overtime or a change in her schedule. Even if we accepted that she was scheduled for fewer hours than other employees, she has not produced any evidence to demonstrate that this action was based upon a discriminatory motive. Nor does Mannie provide circumstantial evidence that would allow a jury to infer intentional discrimination.

Mannie's retaliation claim likewise fails under the indirect approach. She must first establish a prima facie case of retaliation by demonstrating that after engaging in protected activity such as filing a charge, she was subjected to an adverse employment action even though she was performing her job satisfactorily, and no similarly situated employee who did not file a charge was subjected to the adverse employment action. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004). The burden then shifts to the employer to present evidence of a non-invidious reason for the employment action at issue. *Id.* If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual. *Id.* Formerly, the plaintiff was also required to establish a "causal link" between the adverse employment action and the protected conduct. But in *Stone v. City of Indianapolis Pub. Util. Div.*, in an opinion that was circulated under Rule 40(e), we held that plaintiffs seeking to prove retaliation under the indirect method need not show "even an attenuated causal link." 281 F.3d 640, 643-44 (7th Cir. 2002). Nevertheless, in light of some decisions issued soon after *Stone* in which the "causal link" language persists, the district court in this case applied that test in addition to the other factors. Mindful that some confusion remains, we clarify again that no "causal link" is necessary under the indirect method.

Mannie argues that summary judgment was improper because she can establish pretext, but we need not reach this portion of the analysis because she has not demonstrated a

prima facie case of retaliation. Again, Mannie has not sub-stantiated her claim that she suffered an adverse employ-ment action, and she has also failed to identify similarly situated employees who did not file EEOC charges and were treated more favorably. Thus summary judgment was appropriate under either method of proving retaliation.

For the reasons stated above, we AFFIRM the decision of the district court.


A true Copy:

      Teste:


                   _____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—1-20-05