**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 12, 2006
Decided January 25, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-1397

| | |
|---|---|
| RAOUL A. HUGHES, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Central |
| | District of Illinois. |
| *v.* | |
| MITSUBISHI MOTORS NORTH AMERICA, INC., f/k/a MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC., | No. 04 C 1052 |
| | Michael M. Mihm, |
| | *Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Raoul Hughes, an assembly line worker for Mitsubishi Motors North America, Inc., was fired in August 2003 after he allegedly assaulted his supervisor. Hughes had previously accused this particular supervisor of race discrimination and retaliation, so he sued Mitsubishi under Title VII of the Civil Rights Act of 1964 for retaliatory discharge. *See* 42 U.S.C. § 2000e-3(a). The district court granted summary judgment for Mitsubishi on the ground that Hughes lacked evidence of a causal connection between his prior accusations and his termination. We affirm.

Hughes was hired full-time by Mitsubishi in January 2001.  Beginning in 2002 he named supervisor Gary Scott in several charges of race discrimination and retaliation, the last of which was filed in March 2003.  In July 2003 Scott received notice of a problem with the assembly line that Hughes operated.  The parties agree that Scott confronted Hughes about the issue and that the two engaged in a heated argument, but from there the stories diverge.

In his deposition, Mitsubishi's Employee Relations Representative, Omar West, reports that Scott (who passed away before he could provide evidence in this case) sought him out immediately after the incident and complained that Hughes had sworn at him and struck him in the face.  According to West, Scott was holding the right side of his face and staggering while he talked.  And West observed that the right side of Scott's face was red.  When questioned by West, Hughes denied hitting Scott but acknowledged having waved his hand in Scott's direction.  West interviewed several other employees who were in the vicinity of the argument, but none of them saw Hughes punch Scott.  The police were called, and Hughes was arrested and charged with battery.  Based on the statements of Scott and Hughes, Scott's physical appearance immediately after the argument, and the fact that Scott's broken glasses were found 15 feet from where he quarreled with Hughes, West concluded that Hughes had punched Scott.  West recommended to management that Mitsubishi fire Hughes, and he was later discharged.  In his deposition, Hughes denies having punched Scott but admits telling West that he had waved his hand at Scott.  He maintains that earlier that evening Scott had bragged that Hughes would be "snapping" tonight and that they would "get him out of here."

In November 2003 Hughes brought suit claiming retaliatory discharge. Mitsubishi moved for summary judgment, arguing in part that Hughes could not show a causal connection between his protected activity and his termination.  In his response to Mitsubishi's motion, Hughes cited the standard we previously used to evaluate retaliation cases under the direct method, *see, e.g.*, *Fine v. Ryan International Airlines*, 305 F.3d 746, 751-52 (7th Cir. 2002), and argued that he had evidence supporting each of the elements.  The district court disagreed.  The court reasoned that any racial animus harbored by Scott could not be imputed to Mitsubishi because Scott did not make the decision to fire Hughes.

Summary judgment is appropriate if the moving party demonstrates the absence of any genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005).  To prevail on his retaliation claim under the direct method, Hughes had to present direct evidence that he suffered a materially adverse action after engaging in protected activity.  *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415 (2006); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002).  We review a grant of summary

judgment *de novo*, drawing all reasonable inferences in Hughes's favor. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 735 (7th Cir. 2006).

On appeal Hughes argues that Scott's racial animus can be attributed to Mitsubishi and that there was a causal connection between Hughes's protected activity and his being fired. Although the district court ruled in favor of Mitsubishi because it concluded that a causal connection was lacking, we have "jettisoned the causal link analysis." *Phelan v. Cook County*, 463 F.3d 773, 787 (7th Cir. 2006). As noted above, Hughes instead needed to present direct evidence that a materially adverse action followed his participation in protected activity. *White*, 126 S. Ct. at 2415; *Stone*, 281 F.3d at 644. Circumstantial evidence that the employee suffered a materially adverse action because he engaged in protected activity (like filing a charge of discrimination) can establish a case of retaliation under the direct method. *Sylvester v. SOS Children's Vill. Ill., Inc.*, 453 F.3d 900, 902 (7th Cir. 2006).

Hughes argues that Scott improperly influenced the decision to fire him, so Mitsubishi can be held liable for his retaliatory actions. Actions by employees who are not the ultimate decisionmaker generally do not support a claim that the decisionmaker's actions were retaliatory. *See Willis v. Marion County Auditor's Office*, 118 F.3d 542, 546 (7th Cir. 1997). But in cases where the decisionmaker essentially rubber-stamps a biased employee's employment recommendation, the company can be held liable for retaliation under Title VII. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 860-61 (7th Cir. 2003). We do not find this to be such a case. Here, Mitsubishi conducted an independent investigation into whether Hughes had struck Scott. Before taking action, the company interviewed Hughes, Scott, and several others and took account of the physical evidence. Scott had no more input into the decision than did Hughes, *see Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003), and we do not know what more Mitsubishi could have done to investigate the incident. Given the undisputed evidence, we cannot conclude that the district court erred in granting summary judgment.

AFFIRMED.