**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Argued April 18, 2007
Decided April 30, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

No. 06-4018

| | |
|---|---|
| JOSHUA HUPPERT,<br>  *Plaintiff-Appellant,*<br><br>  *v.*<br><br>JOHN E. POTTER,<br>Postmaster General<br>  *Defendant-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br>No. 05 C 1988<br><br>Harry D. Leinenweber,<br>*Judge.* |

**ORDER**

Joshua Huppert, a letter carrier for the United States Postal Service, brought suit against the Postmaster General claiming that two of his supervisors subjected him to discrimination and harassment on account of his alleged physical and mental disabilities and then retaliated against him when he complained of their actions. The district court granted summary judgment for the Postmaster General after concluding that Huppert could not establish that he was disabled or thought to be disabled within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-797b, or that he suffered a materially adverse action as a result of his complaints about his supervisors. We affirm.

Huppert was a letter carrier in Glenview, Illinois, from 1985 until September 2001. He suffered from back and foot problems caused by an injury he incurred in 1988, and as a result his physician directed that he alternate sitting, standing and walking, not lift more than 20 pounds, and avoid twisting to the left. Accordingly, the Postal Service changed Huppert's route, imposed a lifting restriction of 20 pounds, and allowed him to sit while sorting mail and perform his work in a way that did not require twisting to the left. In addition to his physical ailments, Huppert was diagnosed with depression in early 2000 and was treated with medication for brief periods in 2000 and 2001.

In December 2000, Richard Dwiel became Huppert's immediate supervisor. Dwiel repeatedly instructed Huppert to correct his "time wasting practices." Huppert generally requested between 30 minutes and three hours of extra time daily to complete his route. On several occasions Huppert and Dwiel had heated arguments in which Dwiel criticized Huppert's job performance and failure to follow orders. On one occasion Dwiel ordered Huppert to stand while sorting mail, until Huppert informed Dwiel of his medical restrictions.

Between January and September 2001, Huppert filed nine union grievances challenging instructions and disciplinary actions imposed by Dwiel and Robert Slickenmeyer, the Postmaster at Glenview. In January and May of 2001, Dwiel issued four letters of suspension to Huppert, one for leaving express mail behind when going out on his route and three for taking unauthorized overtime, all of which were rescinded after Huppert filed grievances. In June 2001 Dwiel issued a Notice of Removal charging Huppert with driving infractions, but it was reduced to a warning after Huppert filed a grievance. Also in 2001 Huppert filed a grievance challenging Slickenmeyer's denial of his request for leave under the Family and Medical Leave Act ("FMLA"); the denial was overturned in July 2001. Shortly thereafter, Dwiel and Slickenmeyer increased their supervision of Huppert, including on one occasion requiring him to obtain advance permission before using the restroom, getting a drink of water, or retrieving a gurney to load his truck.

Huppert was absent from work for approximately two weeks in late August 2001. During that time he submitted a request for leave under the FMLA, claiming that he was "unable to work for 15 days due to work related stress" and that he required "continuing treatment." Huppert also applied for workers compensation benefits, claiming that he suffered from "[d]epression, anxiety and insomnia" due to "harassment at work" that had started in February 2001 and "increased sharply" in August 2001. In addition, Huppert submitted an "Information for Precomplaint Counseling" to the Postal Service's EEO Dispute Resolution Office alleging discrimination based on his physical disability.

Immediately upon his return to work, Huppert was subjected to the same "special instructions" as before, including not being allowed to use the restroom without permission. Two weeks later, Dwiel ordered Huppert to hold three heavy bundles of mail with his left arm while sorting them with his right hand, which Huppert found objectionable. After this incident, Huppert stopped coming to work. A psychiatrist later diagnosed him with an adjustment disorder attributed primarily to his stressful work environment.

In November 2001 Huppert filed a formal complaint with the Postal Service's EEO Dispute Resolution Office alleging discrimination and harassment based on physical and mental disability as well as retaliation for complaining about the discrimination. After the Postal Service finished its investigation, Huppert brought this action in federal court. He claimed that Dwiel and Slickenmeyer harassed and discriminated against him on account of his physical and mental disabilities, and that they retaliated against him for filing union grievances and his EEO complaint.

The district court granted summary judgment for the Postal Service. The court reasoned that Huppert could not prove that he was disabled within the meaning of the Rehabilitation Act because he was not substantially limited in the major life activity of working and his impairments did not create an inference that his supervisors regarded him as disabled. The court also concluded that Huppert's treatment by his supervisors was not sufficiently severe or pervasive to support a claim of hostile work environment. Finally, the court rejected Huppert's claim that he suffered retaliation as a result of his EEO complaint and union grievances because the actions Huppert identified as retaliatory were not materially adverse.

We review a grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of Huppert as the non-moving party. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005). Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On appeal, Huppert first challenges the district court's determination that he lacked sufficient evidence of a disability as defined in the Rehabilitation Act. A person is disabled under the Act if he "has a physical or mental impairment which substantially limits one or more of such person's major life activities," 29 U.S.C. § 705(20)(B)(i), or "is regarded as having such an impairment," *id.* § 705(20)(B)(iii). *See Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 755 (7th Cir. 2006). To constitute a substantial limitation, an impairment must prevent or severely restrict the person from engaging in important life activities, which can include the activity of working. *Burks,* 464 F.3d at 755-56.

Huppert argues generally that his physical and mental impairments substantially limited him from working, but paradoxically he concedes in his brief on appeal that "he was able to perform his duties as a carrier . . . with accommodation." Notably, Huppert failed to provide any evidence of a substantial limitation. Indeed, the record contains no medical evidence of a physical impairment, other than eight pages of notes from Huppert's orthopedist from 1989 to 2001. The orthopedist, in his two most recent entries, concluded that Huppert "walks comfortably" with the use of orthotic shoes, was showing "good progress" despite a "temporary flare up" of back pain, and needed to be seen only once a year. And Huppert's only evidence of a mental disability is the one-page certification his psychiatrist gave him to attach to his FMLA application three weeks before he permanently abandoned his job; all that document says is that Huppert could not work for two weeks due to "work related stress." This evidence is insufficient to establish that Huppert was disabled. *See Kampmier v. Emeritus Corp.,* 473 F.3d 930, 937-38 (7th Cir. 2007) (concluding that history of injuries and surgeries was insufficient to show that employee was statutorily disabled); *Ogborn v. United Food & Commercial Workers Union, Local No. 881,* 305 F.3d 763, 767-68 (7th Cir. 2002) (concluding that eight-week bout of depression did not constitute a disability).

Huppert also contends that he was disabled simply because the Postal Service implemented accommodations for his medical restrictions: that he lift no more than 20 pounds, sit down to sort mail, and avoid twisting to the left. But these accommodations did not limit Huppert's ability to work significantly enough to render him disabled. *See Kupstas v. City of Greenwood,* 398 F.3d 609, 613-14 (7th Cir. 2006) (concluding that truck driver/laborer was not significantly limited in ability to work by 55- to 60-pound lifting restriction and prohibition against raking or shoveling for more than two hours continuously or four hours daily); *Contreras v. Suncast Corp.,* 237 F.3d 756, 763 (7th Cir. 2001) (concluding that forklift operator was not significantly limited by 45-pound lifting restriction and prohibition against strenuous work or driving forklift for more than four hours daily). Moreover, in order to prevail, Huppert was required to show, not that he was unable to perform one job for one employer, but that his alleged impairments limited his ability to perform an entire class or range of jobs. *See Burnett v. LFW Inc.,* 472 F.3d 471, 483-84 (7th Cir. 2006); *Peters v. City of Mauston,* 311 F.3d 835, 843 (7th Cir. 2002); *Contreras,* 237 F.3d at 762-63. Huppert failed to provide any such evidence.

Huppert also argues that he falls within the purview of the Rehabilitation Act because Dwiel regarded him as disabled. As his sole evidence, Huppert points to Dwiel's statement in response to one of Huppert's grievances that "Mr. Huppert has a medical history, which supports his inability to perform the duties of a letter carrier." But Dwiel went on to state that he had advised Huppert that, if he could not perform his duties as a letter carrier, "there are other jobs in the Post Office available to him that would be less taxing on him." This statement defeats

Huppert's contention that Dwiel viewed him as disabled since Dwiel believed there were other jobs at the Post Office that Huppert could perform. Moreover, the lone statement quoted by Huppert cannot reasonably support a claim of perceived disability in light of the ample evidence in the record that Dwiel attributed Huppert's poor performance not to any known or perceived disability but rather to "time wasting practices" and productivity that fell "far short of his demonstrated abilities." *See Kampmier*, 472 F.3d at 938 (concluding that there is no violation of the "regarded as" prong if the condition is not substantially limiting and the employer does not believe that it is).

Huppert next argues that the district court erred in holding that no jury could reasonably conclude that his supervisors' treatment of him was sufficiently severe or pervasive to constitute a hostile work environment. To support this assertion, Huppert points to his successful grievances and to Dwiel's instructions that Huppert contends were improper, contradictory, and unfairly applied only to him. Huppert also refers to one instance in which Dwiel yelled at him and another in which Dwiel and Slickenmeyer "stood there watching him" and "made comments regarding his work."

We have not yet decided whether a claim of hostile work environment is cognizable under the Rehabilitation Act. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). But we have assumed the existence of such claims where resolution of the issue is not necessary, and we have further assumed that the standard of proof for such a claim would mirror that of Title VII. *Id.* A hostile work environment exists when an employee is harassed on account of his disability in a way that is "'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). But here there is not sufficient evidence that Huppert was disabled or perceived to be disabled by Dwiel or Slickenmeyer. Because Huppert cannot show that his supervisors harassed him on account of any actual or perceived disability, the district court properly concluded that his claim of a hostile work environment must fail.

Finally, Huppert takes issue with the district court's rejection of his retaliation claim. The court rejected this claim on the basis that the adverse actions Huppert cited—the same verbal harassment and increased scrutiny at work that gave rise to his claims of discrimination and a hostile work environment—were not materially adverse because they resulted in no tangible job consequences. Huppert argues in a conclusory fashion that the district court erred because the evidence he offered went "well beyond" verbal harassment and increased scrutiny and that this might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

The analysis of a retaliation claim under the Rehabilitation Act, 29 U.S.C. § 794, is identical to that under Title VII. *Burks,* 464 F.3d at 758 n.16. To prove retaliation using the indirect method, under which Huppert presumably proceeds, he must show that after engaging in protected activity, he, and not any similarly situated employee who did engage in such activity, suffered an adverse action even though he performed his job satisfactorily. *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007). The adverse action must be materially adverse such that the employee would be dissuaded from engaging in the protected activity. *Id.* at 461.

In this case, there is no evidence that Dwiel or Slickenmeyer were aware that Huppert filed a complaint with the Postal Service's EEO office, so the district court correctly concluded that the EEO complaint could not give rise to a retaliation claim. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668-69 (7th Cir. 2006). That leaves the union grievances, which are insufficient to support a claim of retaliation because Huppert did not suffer any materially adverse consequences as a result of making them. Indeed, the adverse actions Huppert describes are the identical actions that caused him to file the union grievances in the first place, namely, the work conditions and disciplinary actions that he believed to be improper and unfair. And other than Huppert's own speculation, he points to no evidence to demonstrate that his supervisors' treatment of him was in retaliation for his filing union grievances against them.

Accordingly, we AFFIRM the judgment of the district court.