NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2010[*]
Decided May 26, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 09-1576

| | |
|---|---|
| JOSHUA REYNOLDS, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
|     *v.* | No. 08-CV-2081 |
| | |
| CHAMPAIGN-URBANA MASS | Michael P. McCuskey, |
| TRANSIT DISTRICT and WILLIAM | *Chief Judge.* |
| VOLK, Managing Director, | |
|     *Defendants-Appellees.* | |

**O R D E R**

Joshua Reynolds appeals from the grant of summary judgment on his discrimination and retaliation claims brought under the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. §§ 12112(a), 12203. Reynolds worked for the Champaign-Urbana Mass Transit District ("MTD") as a bus operator from 2001 until 2007, when he was fired for falsifying his

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

time cards.  He filed this suit against MTD and its Managing Director, William Volk, alleging that the company fired him because of a shoulder injury and retaliated against him for requesting accommodations for this injury.  We affirm.

The following facts are construed in a light most favorable to Reynolds, the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In July 2004 Reynolds injured his right shoulder on the job, necessitating surgery and several months of rehabilitation.  In February 2005, his doctors released him to return to work without restriction.  According to Reynolds, after he returned he was subjected to a "harassment campaign" in which he was reprimanded for fabricated infractions of company rules and subjected to other unspecified forms of retaliation.  Because driving a bus still exacerbated his shoulder pain, Reynolds also submitted applications for reassignment to other, less strenuous, company positions and requested permission to take breaks during his driving shift.  But MTD turned down all of these requests.

In late 2006 MTD discovered that Reynolds had been falsifying his time cards and overstating the amount of time worked on his shifts.  MTD investigated the matter, reviewing time-stamped video from the buses Reynolds drove, incident reports describing Reynolds's falsification of time cards, and bus station records bearing supervisors' notations about Reynolds's end-of-shift activities and departure times.  The investigation revealed that for several months Reynolds had been padding his time worked by routinely adding 10 minutes to his shifts for bus inspections that, MTD says, either were never performed or did not take nearly the amount of time claimed on his time sheets.  Reynolds received overtime pay for the additional time worked, and MTD considered his falsifications to be equivalent to theft and grounds for termination.

While the investigation was pending, Reynolds visited an orthopedic surgeon to treat ongoing shoulder pain.  The doctor again released Reynolds to return to work without restriction, but recommended that MTD perform an ergonomic study.  Reynolds conveyed this recommendation to MTD's medical division on February 2, 2007.  At a meeting three days later, Reynolds's manager confronted him about the company's finding that he had falsified time sheets.  Reynolds denied the allegations, but MTD fired him.  This suit followed.

The district judge dismissed Volk from the lawsuit because Reynolds had not alleged any wrongdoing on his part, and then granted MTD's motion for summary judgment.  The court explained that Reynolds had not offered any evidence to show that his shoulder impairment substantially limited any major life activity, and thus he could not establish disability under the ADA.  Even if Reynolds qualified as disabled, the court added, his claim would still fail: MTD submitted uncontroverted evidence that it fired

Reynolds for his misconduct, and not for any reason related to an actual or perceived disability. As for Reynolds's retaliation claim, the court concluded that Reynolds failed to show that he engaged in protected activity before being targeted with retaliation. And even if his complaints about harassment or his accommodation requests could be considered protected activity, he did not show that similarly situated employees who did not engage in such activities were treated more favorably.

On appeal Reynolds generally challenges the district court's ruling on his discrimination claim. His appellate brief chronicles his worsening shoulder condition and complaints he made to supervisors about the effect of his injury on his ability to drive or his need for accommodation. He also submits for the first time an assortment of documents, including copies of his post-trip inspection reports, his doctor's recommendation regarding the ergonomic study, and incident reports describing occasions when he ended his shifts early due to shoulder pain. But this evidence was not before the district court at summary judgment, and we will not consider it now on appeal. *See Dye v. United States*, 360 F.3d 744, 748 (7th Cir. 2004). As the nonmoving party, Reynolds had to identify a genuine issue of material fact as to whether he suffered from a qualifying disability under the ADA. *See Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 675 (7th Cir. 2006). But Reynolds did not submit any evidence to show that his shoulder impairment limited his ability to work or perform any other major life activity; summary judgment was therefore appropriate. *See* FED. R. CIV. P. 56(e)(2).

As for his retaliation claim, *see* 42 U.S.C. § 12203, Reynolds renews his argument that the suspicious timing of his termination—three days after his request for an ergonomic study—presented a triable issue regarding MTD's motive for firing him. Reynolds can establish a claim of retaliation using either the direct or indirect methods. *See Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005). Under the direct method, Reynolds could present direct or circumstantial evidence showing that MTD fired him because he engaged in statutorily protected activity. *See Phelan v. Cook County*, 463 F.3d 773, 787-88 (7th Cir. 2006). Alternatively, the indirect method required Reynolds to show that he (1) engaged in statutorily protected activity; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees who did not engage in protected activity. *See Squibb v. Memorial Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007).

Reynolds's retaliation claim fails under both tests. Under the direct method, Reynolds relies mostly on the fact that he was fired shortly after he submitted his request for an ergonomic study, and he argues that the temporal proximity between these events reflects MTD's retaliatory motive. But suspicious timing alone is almost never enough to satisfy the causation prong of a plaintiff's burden at summary judgment. *See Andonissamy v.*

*Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008); *Armhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008); *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir. 2006). In light of MTD's undisputed evidence that it fired Reynolds solely based on his misconduct, this is not one of those rare cases where a weak inference regarding suspicious timing alone is enough to create a triable issue.

Nor can Reynolds make out a prima facie case under the indirect approach. He did not introduce any evidence to show that similarly situated employees who did not engage in protected activity received more favorable treatment from MTD. *See Mannie*, 394 F.3d at 984. In any event, Reynolds cannot show pretext: he did not provide any evidence to rebut MTD's position that the company fired him for falsifying his time cards. *See Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Although he maintains that MTD's investigation was flawed, and he denies all allegations of misconduct, Reynolds cannot show that MTD did not honestly believe its stated justification for discharging him. *See Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006).

Accordingly, we AFFIRM the district court's judgment.