## In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-1017

VERLAINE JOREN,

*Plaintiff-Appellant,*

*v.*

JANET A. NAPOLITANO, Secretary of
Department of Homeland Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:08-cv-04757—**Elaine E. Bucklo**, *Judge.*

SUBMITTED SEPTEMBER 23, 2010*—DECIDED FEBRUARY 7, 2011

Before ROVNER, EVANS, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Verlaine Joren sued the Transportation Security Administration (TSA), alleging that she was forced to quit her job as a security screener at Midway

---

* After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Airport after her supervisor discriminated against her based on her disability, age, and gender and retaliated against her for settling a previous complaint about the discrimination. The district court granted the TSA's motion to dismiss, concluding that Joren failed to state a claim for relief under Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and that as a former employee of the TSA, she was ineligible to seek redress under the Rehabilitation Act, *see* 29 U.S.C. §§ 791, 794.

Although Joren alleges discrimination based on gender, age, and disability, the facts recounted in her second amended complaint—which we accept as true for purposes of this appeal, *see Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)—focus on her disability. Joren, who was 63 years old when she filed this suit, has a blood-clotting disorder that causes chronic leg pain and bleeding and that occasionally limits her ability to stand or walk. She asked her supervisor, Arthur Bell, to accommodate this condition by modifying her schedule, assigning her to light-duty tasks, or allowing her to relocate from Midway to an airport in Florida where "weather conditions might be more hospitable to her medical condition." But Bell, skeptical of Joren's condition, rejected the proposed accommodations. Instead, according to Joren, he refused to recognize her seniority, required her to participate in excessive and unnecessary job training, contacted her doctor without her permission, and added notations to her personnel file that would derail her efforts to transfer to Florida. And when Joren came to work in December 2003 wearing a temporary heart monitor that required her to maintain

a safe distance from x-ray machines, Bell allegedly refused to give her a temporary reassignment without a letter from a doctor quantifying what was meant by "safe distance."

Joren maintains that her employment situation became untenable in January 2004 when Bell summoned her to the airport for a meeting with TSA officials from Washington. At the meeting Bell confronted Joren regarding an unspecified "wrongful situation" apparently relating to claims Joren had filed with the Social Security Administration. This conversation greatly distressed Joren, so she resigned. Later, Bell refused to send Joren the paperwork she needed to maintain her health-insurance coverage.

Joren's operative complaint represents her third try after the district court dismissed her first two as inadequate under Rule 8 of the Federal Rules of Civil Procedure. In her first amended complaint, Joren alleged that the TSA forced her to quit because of her disability in violation of the Rehabilitation Act, which governs claims of disability discrimination by federal employees. *See Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). The court dismissed this complaint on grounds that the Aviation and Transportation Security Act (ATSA), Pub. L. No. 107-71, 115 Stat. 597, preempted the Rehabilitation Act and precluded security screeners from stating a claim of disability discrimination. Joren amended her complaint a second time, claiming that she was constructively discharged, subjected to a hostile work environment, and retaliated against—all in violation of Title VII;

she also repeated her claim that the TSA discriminated against her based on her disability in violation of the Rehabilitation Act. Although Joren styled the first three claims as arising under Title VII, the district court construed the facts included in each count as alleging discrimination based on disability, which is not covered by that Act. The court then reaffirmed that Joren's claims of disability discrimination under the Rehabilitation Act were preempted by the ATSA.

On appeal Joren argues that the district court misread the allegations in her complaint. She insists that her case has always been about sex discrimination and contends that the district court erred in concluding that she had not stated a claim of discrimination based on her gender. Joren does, however, continue to assert that she was discriminated against based on her age and disability, so we will address all three possible claims.

On two of her theories, the district court properly dismissed Joren's suit for failing to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss on the basis of gender discrimination, Joren needed to allege that the TSA instituted an adverse employment action against her "on the basis of her sex." *See Tamayo*, 526 F.3d at 1084. Joren alleges that she was forced to quit, subjected to retaliation, and made to endure a hostile work environment, but her allegations do not suggest that gender motivated any of these actions. Joren's allegations of age discrimination similarly fail

to suggest that her age played any role in the treatment she received.

Joren's claim of disability discrimination, however, raises a question of first impression in this circuit: Does the ATSA prohibit security screeners from successfully bringing discrimination claims against the TSA under the Rehabilitation Act? In the immediate aftermath of the terrorist attacks of September 11, 2001, Congress passed the ATSA, which established the TSA as the federal agency responsible for airport security screening. The ATSA charged the TSA with improving aviation security and establishing qualification standards for airport security screeners.

We now join every other circuit to have considered the question and conclude that the plain language of the ATSA preempts application of the Rehabilitation Act to security screeners. *See Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1337 (11th Cir. 2006); *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1383 (Fed. Cir. 2004); *see also Conyers v. Rossides*, 558 F.3d 137, 144 (2d Cir. 2009). Specifically, the ATSA provides that "[n]otwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for . . . individuals . . . to carry out the screening functions." 49 U.S.C. § 44935(f) (codified as a note). The Supreme Court has recognized in other contexts that the use of a "notwithstanding" clause signals Congressional intent to supercede conflicting provisions of any other statute. *See Cisneros v.*

*Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). Our sister circuits have applied the Supreme Court's directive to this provision of the ATSA and concluded that Congress intended to enhance the Secretary's flexibility in hiring security screeners to allow selection without regard to the prohibitions against disability discrimination in the Rehabilitation Act. *See Conyers v. Rossides*, 558 F.3d at 144-45; *Castro*, 472 F.3d at 1338; *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d at 1383. We agree with this approach and conclude that the ATSA's plain language reflects Congress's intent to preempt the application of the Rehabilitation Act to security screening positions.

Because Joren may not bring a claim of disability discrimination under the Rehabilitation Act and because she has also not stated a valid claim of age or gender discrimination, the judgment of the district court is AFFIRMED.